Riverside Trust Company, Appellant, *v.* Twitchell et al.

Argued May 26, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Paul H. Rhoads*, with him *John Fox Weiss*, of *Weiss & Rhoads*, for appellant.

*Thomas C. McCarrell, Jr.*, of *Stroh & McCarrell*, for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1941:

This appeal is from the order (as well as the dismissal of exceptions filed thereto) of the Court of Common Pleas of Dauphin County making absolute a rule to quash a writ of foreign attachment issued by plaintiff, Riverside Trust Company, a foreign corporation, summoning the trustee and executors as garnishees, in order to attach the interests of defendant, Katharine Gorgas Twitchell, a resident of the State of Connecticut, under a deed of trust of her aunt, Kate F. Gorgas, and under the will of her father, George A. Gorgas, deceased.

The sole question for our determination is whether or not the foreign attachment in question binds either or both of these interests of defendant. The learned court below held that neither is bound, for the reason (1) that defendant's interest under the deed of trust, being composed entirely of income from a spendthrift trust, was exempt from attachment; and (2) that inasmuch as defendant was not to receive her legacy under the will, the income from a life estate, until the death of her mother, the prior life tenant who was still living, the garnishees, therefore, had no funds of defendant in that estate in their possession at the time of service of the writ and thus it attached nothing.

An examination of the deed of trust shows that the pertinent portion thereof is as follows: "Whereas, the said Kate F. Gorgas, Grantor, having available certain funds for investment, and wishing to provide a regular and assured income for the persons hereinafter described, and desiring to be relieved of the difficulties and anxieties in the investment and management of the said funds, . . . the said Kate F. Gorgas, Grantor, has given and set over, and by these presents does give, grant and set over unto the Harrisburg Trust Company, Trustee, its successors and assigns, the sum of Twenty-five Thousand Dollars ($25,000.00), . . . in trust, nevertheless, upon and for the following uses and purposes, to wit: To invest and reinvest the said funds from time to time in such good income producing securities as it may select . . . The net income from the said Trust to be paid over during her lifetime to Katharine Gorgas Twitchell . . . After the death of the said Katharine Gorgas Twitchell, the net income is to be paid in equal shares to her surviving children . . . It being the intent and purpose of this Trust to maintain and preserve the corpus of the Trust Fund unimpaired, it is hereby expressly agreed that there shall be no power of anticipation or of pledge or assignment either of the income or of the principal of the Trust

Fund, or of any interest therein whatsoever; and the Trustee, its successors and assigns, shall hold and administer the Trust and pay over the income received by it as aforesaid, and the principal sum upon the termination of the Trust, as herein provided, free from any debts, liabilities, obligations or other engagements whatsoever of the Grantor, or of any persons who, by the terms hereof, may be or become beneficiaries hereunder." It is the contention of plaintiff that this instrument does not create a spendthrift trust as to the income, as found by the learned court below, and, therefore, defendant's interest thereunder is subject to foreign attachment. With this argument, we cannot agree.

It is entirely competent, as conceded by plaintiff, for a donor to create a valid spendthrift trust so as to protect the trust estate from the creditors of the beneficiary: *McCurdy v. Bellefonte Trust Co.*, 292 Pa. 407, 410. Furthermore, in this connection, it was said, in *Morgan's Estate (No. 1)*, 223 Pa. 228, 230: "The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of cujus est dare, ejus est disponere. It allows the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: *Holdship v. Patterson*, 7 Watts, 547." See also *Harrison's Estate*, 322 Pa. 532, 533. Where there is an express provision forbidding anticipatory alienation and attachment by creditors, a spendthrift trust exists: *Keeler's Estate*, 334 Pa. 225, 229.

We have carefully studied the deed of trust in the present controversy and without any hesitancy conclude that the donor intended to protect the income, as well as the corpus, from any anticipation of the

defendant and other beneficiaries, or their creditors. Plaintiff argues that the expression contained in the trust agreement, i. e., "It being the intent and purpose of this Trust to maintain and preserve the corpus of the Trust Fund unimpaired", signifies an intent to protect merely the principal. Yet when the instrument is examined as a whole, it readily appears that the grantor definitely intended an equal protection of the income. The intent to create a spendthrift trust is not to be set aside merely because it is not clearly expressed by the scrivener: *Shower's Estate,* 211 Pa. 297, 305. Moreover, all grantor's words must be considered in the search for his intention, and they are to be given their natural effect, if this can be done without violating any rule of law: *Denlinger's Estate,* 170 Pa. 104, 106. That it was donor's obvious intention in the instant case to create a spendthrift trust as to the income, as well as the corpus, is made clear when she states, inter alia, that she wished to "provide a regular and assured *income* for the persons hereinafter described", among whom was the defendant; "That there shall be no power of anticipation or of pledge or assignment either of *income* or of the principal"; and that the trustee is to "pay over the *income* . . . and the principal sum . . . free from any debts, liabilities, obligations or other engagements whatsoever . . . of any persons who, by the terms hereof, may be or become beneficiaries hereunder." (Italics added.) The income, under such circumstances, remains the property of the grantor until it is actually paid to the beneficiary: *Fox's Estate,* 264 Pa. 478, 480. The learned court below, therefore, properly held that this income was exempt from the attachment.

As to the interest of defendant under her father's will, we are constrained, however, to conclude that the learned court below fell into error in holding that because the first life tenant is yet living, there is no property of defendant in the hands of the garnishees which the writ could attach. It is the established law of this

Commonwealth, under circumstances as here presented, that whether or not an attachment is valid depends, not upon whether the interest of defendant is actually in the hands of the garnishee at the time of service of the writ or comes into possession thereafter, but rather upon the nature of that interest under the will in question: *Wheaton Coal Co. v. Harris*, 288 Pa. 294, 297. For this reason, *David E. Kennedy, Inc., v. Schleindl*, 290 Pa. 38, relied upon by the court below, is not in point. That case applies to a situation where there is no property interest whatever, beneficial or otherwise, in the hands of the garnishee when the writ is served, and there is an attempt to bind that which is after-acquired. If, as here, the interest of defendant is vested, it is subject to attachment; if contingent or subject to a condition precedent, it is not: *Overbrook Heights Building & Loan Association v. Wilson*, 333 Pa. 449, 452. See also *Patterson v. Caldwell*, 124 Pa. 455, 461. "The mere fact that the interest of a beneficiary of a trust is a future rather than a present interest does not prevent his creditors from reaching it. Where his interest is vested, the mere fact that it is subject to be divested does not prevent his creditors from reaching it": Scott on Trusts, Vol. 1, section 162, p. 810.

The pertinent portion of the will of George A. Gorgas provides, as follows: "2. I give and bequeath the sum of One Hundred Thousand ($100,000) Dollars to the Harrisburg Trust Company, of Harrisburg, Pa., in trust to invest, reinvest and keep invested the same and *to pay the net income thereof (a) to my wife during her life, and (b) upon her death to my daughter, Katharine Gorgas Twitchell, during her life*. Upon the death of my wife and my daughter, whichever shall last happen, I direct that the said income shall be paid monthly to the surviving children of my daughter in equal shares until the youngest thereof shall reach the age of twenty-one years, whereupon and thereafter distribution of the principal of the said fund shall be made in equal shares

among such children but said shares shall be paid to them respectively in the following proportions . . .." (Italics added.)

From a careful examination of this will, we are satisfied beyond question that the interest of defendant is vested and, therefore, subject to the attachment. In this connection, it is aptly said, in Tiffany on Real Property (3rd ed.) Vol. 2, section 323, p. 30: "; . . . the distinction between a vested and a contingent remainder lies in the fact that a vested remainder is an estate while a contingent remainder is merely the possibility or prospect of an estate. Whether, in any particular case, a remainder is contingent or vested depends on the construction of the language used, as creating a mere possibility of an estate, or as creating an estate. The uncertainty which distinguishes a contingent remainder is not the uncertainty whether the remainderman will ever enjoy it, but the uncertainty whether there will be a right to such enjoyment . . . [p. 31] In the case, for instance, of a limitation to A for life with remainder to B for life, B evidently has an estate, and not a mere possibility of an estate, since there is no condition precedent." Again, it was said by this Court, in *Wheaton Coal Co. v. Harris,* supra, 297, 298: "It is a well-settled rule, repeated in numerous cases . . . that the test in determining if an interest is vested or contingent, is not the certainty or uncertainty of obtaining actual possession, nor the defeasibility or indefeasibility of the right of possession, inasmuch as estates may be vested in interest though without present right of possession. So long as a present right exists to a future possession the estate is vested, even though actual possession may be defeated by a future event." See also *Overbrook Heights Building & Loan Association v. Wilson,* supra; Fearne on Remainders, Chap. 1, section 7, p. 216; Restatement of the Law of Property, section 157, comment p., pp. 554, 555. As between vested and contingent interests, the law favors vested interests:

*Marshall's Estate,* 262 Pa. 145, 147. Any doubt will be resolved in favor of vesting, and an interest will be held to be contingent only if that intent by the testator is clearly shown.

In the instant case the estate of defendant, Katharine Gorgas Twitchell, who was alive at the death of her father, the testator, has the present capacity of taking effect in possession, if the possession were to become vacant by the death of her mother, the first life tenant, and thus she has a vested interest. The mere fact that that estate is subject to be divested by her death before that of her mother does not render her life tenancy contingent and prevent her creditors from attaching it.

It is argued by defendant that when testator provided "to pay the net income thereof (a) to my wife during her life, and (b) upon her death to my daughter [defendant]", he evidenced his intention to give her merely a contingent interest, on the theory that where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction, and must partake of its quality, insomuch that if the one is future and contingent, so must the other be. Defendant relies for such contention upon *Feeney's Estate,* 293 Pa. 273. That case is clearly distinguishable from the present controversy, for the reason that there the testator provided that "the income from said fund shall be paid . . . to said children" *living at the death of the first life tenant,* and clearly, therefore, the interest in the second life tenancies there were contingent, since the children could not be ascertained until the death of the first life tenant; while here, the second life tenant is ascertained, in being and ready to take upon the death of the first taker. Furthermore, in discussing the proposition upon which the defendant here relies, this Court, speaking through its present Chief Justice said, in *Lloyd's Estate,* 326 Pa. 230, 233: "As was said by Judge GEST of the Orphans' Court of Philadelphia, whose learning in that branch of the law with which

he dealt was second to none, in *Buckman's Est.*, 13 D. & C. 653, 655, 'It will, however, readily be perceived from a consideration of the context and of the cases cited by [Smith on Executory Interests] that the contingency was inferred not merely from the direction to pay or to divide, but upon some language in the wills construed which indicated that the payment was to be made only upon the devisee's attaining a certain age or the like. . . . The above remark of Mr. Smith does not seem to be intended as a general canon of construction. And why should it be? What substantial difference is there between a devise after life estate to the testator's children (which is clearly vested) and a direction that the estate should be divided among them.' As long ago as *McClure's Appeal,* 72 Pa. 414, we pointed out (p. 418) : 'Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question.' " In the present case there is no question that the gift of the life estate to the defendant, Katharine Gorgas Twitchell, was merely postponed to enable testator's widow to enjoy the income from the estate during her life.

For the above reasons, the orders appealed from should be modified and the record remitted in order that the foreign attachment may be reinstated only as to the vested interest of defendant under the will of her father, and if and when judgment is entered against the garnishees, it shall be confined to whatever interest of defendant comes into the garnishees' hands following the death of the first life tenant.

The orders, as modified, are affirmed, and the record remitted for further proceedings consistent with this opinion. Costs to abide the final disposition of the cause.